NATIONAL SUPER SPUDS, INC., et al., Plaintiffs,

v.

NEW YORK MERCANTILE EXCHANGE et al., Defendants.

INCOMCO, Plaintiff,

v.

NEW YORK MERCANTILE EXCHANGE et al., Defendants.

Howard BERENSON, Plaintiff,

v.

John Richard SIMPLOT et al., Defendants.

Neil LEIST et al., Plaintiffs,

v.

John Richard SIMPLOT et al., Defendants.

Dexter RICHARDS, Plaintiff,

v.

NEW YORK MERCANTILE EXCHANGE et al., Defendants.

Nos. 76 Civ. 2375, 2554, 2571, 2594, 2648, 3210, 4350 and 5200 (LFM).

United States District Court, S. D. New York.

May 29, 1979.

Leight, New York City, for defendant New York Mercantile Exchange.

Thompson & Mitchell by W. Stanley Walch, Gerard K. Sandweg, Jr., and Kenton E. Knickmeyer, St. Louis, Mo., and Barrett, Smith, Schapiro, Simon & Armstrong, New York City, for defendant Clayton Brokerage Co. of St. Louis, Inc.

Dewey Ballantine, Bushby, Palmer & Wood by Hugh N. Fryer and Ira G. Greenberg, New York City, and Sidley & Austin by Stuart S. Ball, Lawrence H. Hunt, Jr., Thomas F. Ryan and Michael W. Davis, Chicago, Ill., for defendant Heinold Commodities, Inc.

Hall, McNicol, Hamilton & Clark by Donald G. McCabe, New York City, for defendant Thomson & McKinnon Auchincloss Kohlmeyer, Inc.

Pomerantz, Levy, Haudek & Block by William E. Haudek, Richard M. Meyer and Roger W. Haudek, New York City, for class plaintiffs.

Howard Berenson, plaintiff pro se.

Robson & Toboroff by Leonard Toboroff and Kenneth N. Miller, New York City, for plaintiffs Neil Leist, Philip M. Smith and Incomco.

Jay W. Kaufmann, New York City, for plaintiff Dexter Richards.

MacMAHON, District Judge.

Defendants, the New York Mercantile Exchange (the "Exchange"), Richard Levine ("Levine"), Howard Gabler ("Gabler"), Alfred Pennisi ("Pennisi"), Clayton Brokerage Co. of St. Louis, Inc. ("Clayton"), Heinold Commodities, Inc. ("Heinold") and Thomson & McKinnon Auchincloss Kohlmeyer, Inc. ("Thomson"), move under Rule 12(c), Fed.R.Civ.P., for judgment on the pleadings, or, in the alternative, under Rule 56(b), Fed.R.Civ.P., for partial summary judgment dismissing all or part of the complaints against them in these related actions.[1] Since all parties have submitted

Rein, Mound & Cotton by Maurice Mound, New York City, and Cahill, Gordon & Reindel by William E. Hegarty, Charles Platto, Ruth D. MacNaughton, and Peter

1. The Exchange moves in the following actions: *National Super Spuds, Inc. v. New York Mercantile Exchange*, 76 Civ. 2375, 76 Civ. 2554, 76 Civ. 2571, 76 Civ. 2594 (the "consolidated class

factual material outside the pleadings, we treat the motions as motions for partial summary judgment.

These actions arise out of the much publicized default in May 1976 of Maine potato futures contracts,[2] when the sellers of almost 1,000 contracts failed to deliver approximately 50,000,000 pounds of potatoes, resulting in the largest default in the history of commodities futures trading in this country. The primary claim in these actions is that the default was caused by certain defendants' price manipulation.

In order to understand these motions, a basic understanding of the commodities futures industry is essential. A commodity future is a contract for the future delivery of a certain commodity. Except for price, all the terms of the contracts for a given commodity traded on an exchange are standardized and, thus, the contracts are fungible. The actual trading of futures is done by futures commission merchants and floor brokers, both of whom must be registered with the Commodities Futures Trading Commission (the "CFTC").[3] Additionally, trading may take place only on exchanges which have complied with certain statutory requirements and have been designated as "contract markets" by the CFTC.[4]

A seller of a futures contract is, in the language of the trade, in a "short" position, that is, he is obligated to deliver the commodity at a future date in return for the right to receive the purchase price. Conversely, a buyer of a futures contract is said to be in a "long" position, that is, he is obligated to pay the purchase price in return for the right to receive the commodity. As a practical matter, however, physical delivery of the commodity is made on only a small fraction of the futures contracts traded on the nation's exchanges. Most of the trades are made by speculators who have no intention of delivering or receiving the actual commodity. As the last day of trading in a particular contract approaches, a speculator in a short position (a seller) will cover his obligation to deliver by buying a contract. Similarly, a speculator in a long position (a buyer) will cover his obligation to pay by selling a contract.[5]

Plaintiffs, traders and a dealer in potatoes, were buyers holding long positions in May 1976 Maine potato futures contracts. They allege that Clayton, Heinold and Thomson, futures commission merchants, conspired with certain of their customers to manipulate and depress the price of the May contract by selling an illegally large number of May contracts, thereby causing plaintiffs to sell their contracts and potatoes at an artificially depressed price.

Plaintiffs contend that the actions of Clayton, Heinold and Thomson violated the Commodities Exchange Act[6] (the "Act"), various regulations promulgated thereunder,[7] and Sections 1 and 2 of the Sherman

actions"); *Incomco v. New York Mercantile Exchange*, 76 Civ. 2648; and *Leist v. Simplot*, 76 Civ. 4350.

Levine, Gabler and Pennisi move in *Leist v. Simplot*, 76 Civ. 4350.

Clayton moves in the consolidated class actions and in *Leist v. Simplot*, 76 Civ. 4350. Heinold and Thomson move in the consolidated class actions, in *Berenson v. Simplot*, 76 Civ. 3210, and in *Leist v. Simplot*, 76 Civ. 4350.

The motions of the Exchange, Levine, Clayton, Heinold and Thomson in *Richards v. New York Mercantile Exchange*, 76 Civ. 5200, are denied as moot because this action was discontinued after these motions were filed.

The motions of the Exchange and Clayton in *Berenson v. Simplot*, 76 Civ. 3210, are also denied as moot because this action has been discontinued as to the Exchange and Clayton.

2. See N.Y. Times, May 26, 1976, at 1, col. 1.

3. 7 U.S.C. §§ 6d, 6e, 6f.

4. 7 U.S.C. §§ 6, 7.

5. The commodities futures industry is described in more detail in S. Angrist, Sensible Speculating in Commodities (1972) and S. Kroll & I. Shishko, Commodity Futures Market Guide (1973).

6. 7 U.S.C. § 1 et seq.

7. Plaintiffs also allege violations of the Exchange's rules. Because the obligation to obey these rules arises under the CFTC's regulations, we consider these claims as alleging violations of the CFTC's regulations.

Act.[8] Plaintiffs also contend that the Exchange, a designated contract market, and its officers, Levine, Gabler and Pennisi, are liable to them for failure to take steps to prevent the downward price manipulation by the other defendants, and that the Exchange conspired with the other defendants to manipulate the price.

Specifically, plaintiffs allege that the Exchange and its officers failed to report and concealed violations of the Act and the regulations promulgated thereunder; that the Exchange and its officers violated the Act by failing to enforce its own rules, the Act and the CFTC's regulations; and that the Exchange violated Sections 1 and 2 of the Sherman Act.

## IMPLIED RIGHT OF ACTION

All moving defendants contend that they are entitled to partial summary judgment because there is no private right of action against them under the Act. Concededly, such a right of action existed prior to 1974,[9] but, in that year, the Act was amended extensively,[10] and the question before us is whether the private right of action has survived the 1974 amendments to the Act.

Although a number of other district courts have considered this question, there is no clear consensus on the answer.[11] This difference of opinion and the importance of the question to the future course of these actions compel us to resolve the question ourselves.

Under *Cort v. Ash*,[12] four factors are relevant in determining whether a private right of action may be implied under a federal statute which does not expressly provide for one:

"First, is the plaintiff 'one of the class for whose *especial* benefit the statute was enacted,' . . . that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law? . . ."[13]

There can be no question that plaintiffs, investors in the commodities market and a dealer in potatoes, are within the class "for whose especial benefit the statute was enacted." As Senator Dole stated, the primary purposes of the 1974 amendments to

---

8. 15 U.S.C. §§ 1, 2.

9. E. g., *Deaktor v. L. D. Schreiber & Co.*, 479 F.2d 529 (7th Cir.), *rev'd on other grounds sub nom. Chicago Mercantile Exchange v. Deaktor*, 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344 (1973); *Goodman v. H. Hentz & Co.*, 265 F.Supp. 440 (N.D.Ill.1967).

10. Commodity Futures Trading Commission Act of 1974, Pub.L.No.93–463, 88 Stat. 1389 (codified at 7 U.S.C. § 1 et seq.). The Act was further amended in 1978. Futures Trading Act of 1978, Pub.L.No.95–405, 92 Stat. 865 (codified at 7 U.S.C. § 1 et seq.).

11. Nine cases have stated that a private right of action exists under the Act: *R. J. Hereley & Son v. Stotler & Co.*, 466 F.Supp. 345 (N.D.Ill. 1979); *Smith v. Groover*, 468 F.Supp. 105 (N.D. Ill.1979); *Gravois v. Fairchild, Arabatzis & Smith, Inc.*, Comm.Fut.L.Rep. (CCH) ¶ 20,706 (E.D.La.1978); *Berenson v. Madda Trading Co.*, No. 78–544 (D.D.C. Oct. 30, 1978); *Hoffmayer v. Dean Witter & Co.*, 459 F.Supp. 733 (N.D.

Cal.1978); *Kelley v. Carr*, 442 F.Supp. 346 (W.D.Mich.1977); *Bache Halsey Stuart, Inc. v. French*, 425 F.Supp. 1231 (D.D.C.1977); *Shearson Hayden Stone, Inc. v. Lumber Merchants, Inc.*, 423 F.Supp. 559 (S.D.Fla.1976); *Milani v. Conticommodity Serv., Inc.*, 462 F.Supp. 405 (N.D.Cal.1976).

Five cases have stated that no private right of action exists under the Act: *Alkan v. Rosenthal & Co.*, Comm.Fut.L.Rep. (CCH) ¶ 20,797 (S.D.Ohio 1979); *Berman v. Bache Halsey Stuart, Shields, Inc.*, 467 F.Supp. 311 (S.D.Ohio 1979); *Bartels v. International Commodities Corp.*, 435 F.Supp. 865 (D.Conn.1977); *Consolo v. Hornblower & Weeks-Hemphill, Noyes, Inc.*, 436 F.Supp. 447 (D.Ohio 1976); *Arkoosh v. Dean Witter & Co.*, 415 F.Supp. 535 (D.Neb. 1976), *aff'd on other grounds*, 571 F.2d 437 (8th Cir. 1978).

12. 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

13. *Id.* at 78, 95 S.Ct. at 2088 (citations omitted).

the Act were "[to protect] against manipulation of markets and to protect any individual who desires to participate in futures market trading." [14] Additionally, the Act itself states that price manipulation and unreasonable fluctuations in price "are detrimental to . . . persons handling commodit[ies]." [15]

Thus, we find that the first element of the *Cort* test is satisfied.

The second element of the *Cort* test, congressional intent, is more troublesome. The 1974 amendments to the Act established an administrative procedure under which "[a]ny person complaining of any violation of any provision of this chapter or any rule, regulation, or order thereunder by any person who is registered or required to be registered under . . . this title may" [16] commence an administrative proceeding before the CFTC to recover reparations. Judgments resulting from these reparation proceedings are subject to judicial review by the courts of appeal [17] and may be enforced in the district courts. [18]

The 1974 amendments also give the CFTC plenary power over futures commission merchants and contract markets. The CFTC may suspend or revoke the registration of a futures commission merchant or the designation of a contract market. [19] The

CFTC is also authorized to issue cease and desist orders against contract markets [20] and to assess civil penalties of up to $100,-000 against futures commission merchants and contract markets. [21] Finally, the CFTC or the Attorney General, at the request of the CFTC, is authorized to bring an action in the district courts against futures commission merchants and contract markets for a restraining order, an injunction or a writ of mandamus to compel compliance with the Act and the regulations thereunder. [22]

We believe that under the maxim of "*expressio unius est exclusio alterius,*" [23] the establishment of administrative reparation proceedings and the plenary grant of disciplinary and regulatory power to the CFTC evidences a congressional intent to deny a private right of action under the Act. This conclusion is reinforced by the fact that Congress was informed of the need for a private right of action under the Act [24] but rejected a bill which would have expressly established such a right of action. [25]

Thus, we conclude that Congress did not intend that there be a private right of action under the Act.

The third element of the *Cort* test, whether the implication of a private right of action would be consistent with the underlying purposes of the Act, also weighs

---

**14.** 120 Cong. Rec.-Senate 30466 (1974) (remarks of Sen. Dole); accord 120 Cong. Rec.-Senate 34998–99 (1974) (remarks of Sen. Clark). See also *Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 567 F.2d 1174, 1179 (2d Cir. 1977).

**15.** 7 U.S.C. § 5.

**16.** 7 U.S.C. § 18(a).

**17.** 7 U.S.C. § 18(g).

**18.** 7 U.S.C. § 18(f).

**19.** 7 U.S.C. §§ 7b, 9.

**20.** 7 U.S.C. § 13a.

**21.** 7 U.S.C. §§ 9, 13a.

**22.** 7 U.S.C. § 13a–1. The 1978 amendments to the Act added a provision by which a state may bring an action under the Act on behalf of its citizens. 7 U.S.C. § 13a–2.

**23.** Expression of one thing is the exclusion of another. See *Securities Investor Protection Corp. v. Barbour,* 421 U.S. 412, 419, 95 S.Ct. 1733, 44 L.Ed.2d 263 (1975); *National R. R. Passenger Corp. v. National Ass'n of R. R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974); *Redington v. Touche Ross & Co.,* 592 F.2d 617, 629–30 (2d Cir.) (Mulligan, J., dissenting), *cert. granted,* —— U.S. ——, 99 S.Ct. 563, 58 L.Ed.2d 649 (1978).

**24.** Hearings on S. 2485, S. 2578, S. 2837 and H.R. 13113 before the Senate Committee on Agriculture and Forestry 93d Cong., 2d Sess. pt. 3, 737, 746 (1974) (testimony of Prof. Roy A. Schotland).

**25.** S. 2837, 93d Cong., 1st Sess. § 505(a) (1973). This bill provided for actual damages for non-wilful violations of the Act and treble damages for wilful violations.

against the implication of such a right. As applied by the Supreme Court, this element of the *Cort* test is satisfied when the implication of a private right of action is necessary in order to further the purposes of the statute in question.[26]

Contract markets, such as the Exchange, are not registered persons under the Act, and, thus, they are exempt from the administrative reparation proceeding established by the Act. The CFTC alone has the right to assess a monetary civil penalty against a contract market, and the Act imposes two limitations on the amount of the civil penalty which may be assessed against a contract market. First, there is an overall limitation of $100,000.[27] Second, the CFTC is required to consider "whether the amount of the penalty will materially impair the contract market's ability to carry on its operations and duties."[28] We believe that both of these limitations evidence a congressional intent to limit the potential monetary exposure of contract markets. Since neither of these limitations would be present in private actions against contract markets, the implication of a right of action against contract markets would be inconsistent with the manifest intent of Congress to limit the potential monetary liability of contract markets.

Additionally, the implication of a private right of action against futures commission merchants would not be consistent with the Act because it is not necessary to further the purposes of the Act. Since there is no dispute that futures commission merchants, such as Clayton, Heinold and Thomson, are subject to the administrative reparation proceedings mentioned above,[29] there is plainly no necessity to imply a right of action to remedy injuries which are fully compensable in administrative proceedings.

Thus, we conclude that implication of a private right of action under the Act would not be consistent with the underlying purposes of the Act.

The fourth element of the *Cort* test, whether the implication of a private right would infringe on an area of state concern, favors the implication of such a right since it is well settled that the regulation of commodity futures trading is essentially a matter of federal concern.[30]

Thus, our application of the *Cort* test leads us to conclude that there is no private right of action under the Act because the two critical elements of the test,[31] congressional intent and consistency with the statutory scheme, weigh strongly against the implication of such a right.

Plaintiffs contend that the implication of a private right of action under the Act is compelled by those cases which have implied private rights of action under the Securities Exchange Act of 1934.[32] Although we agree with plaintiffs that there are some similarities between the commodity futures industry and the securities industry, we find that the respective statutory schemes are significantly different. First, the Securities Exchange Act does not provide any administrative remedy to defrauded investors as does the Commodities Exchange Act. Second, the Securities Exchange Act does not grant the SEC the same plenary powers that the Commodities Exchange Act gives the CFTC.[33] Finally,

**26.** *Piper v. Chris-Craft Indus., Inc.,* 430 U.S. 1, 39–40, 97 S.Ct. 926, 51 L.Ed.2d 124 (1977); *Cort v. Ash, supra,* 422 U.S. at 84, 95 S.Ct. 2080; *J. I. Case Co. v. Borak,* 377 U.S. 426, 432, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Comment, Implying Private Causes of Action from Federal Statutes, 17 Boston Col.Indus. & Com. L.Rev. 53, 69 (1975).

**27.** 7 U.S.C. § 13a.

**28.** *Id.*

**29.** See text accompanying notes 16 18, *supra.*

**30.** See *e. g. Smith v. Groover, supra,* 468 F.Supp. at 115–116; *Gravois v. Fairchild, Arabatzis & Smith, Inc., supra,* Comm.Fut.L.Rep. (CCH) ᵉ 20,706 at 22,873.

**31.** See *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers, supra,* 414 U.S. at 457–58, 94 S.Ct. 690.

**32.** 15 U.S.C. § 78ᵃ et seq.

**33.** The SEC's power over brokers, dealers and securities exchanges is limited to suspension or revocation of their registration. 15 U.S.C.

the Commodities Exchange Act contains no counterpart to the Securities Exchange Act's specific grant of jurisdiction to the district courts over violations of that Act,[34] which the Supreme Court found of critical importance when it implied private rights of action under that Act.[35]

Plaintiffs also argue that the CFTC interprets the Act as allowing private rights of action [36] and that the CFTC's interpretation is entitled to " 'great deference.' " [37] However, as the Supreme Court has recently stated, the administrative deference rule is not applicable where the "narrow legal issue is one peculiarly reserved for judicial resolution, namely whether a cause of action should be implied by judicial interpretation in favor of a particular class of litigants." [38]

Finally, we note that the Supreme Court's recent decision in *Cannon v. University of Chicago* [39] is readily distinguishable from this case. In *Cannon*, the Supreme Court implied a private right of action for a victim of alleged sex discrimination under Title IX of the Education Amendments of 1972,[40] despite the existence of an administrative procedure to enforce those amendments. However, the only administrative remedy under Title IX is the termination of federal grants to educational institutions which discriminate on the basis of sex. Thus, the Supreme Court found that Title IX provided no private administrative remedy to victims of sex discrimination.[41] In contrast, the reparations procedure available under the Commodities Exchange Act provides a remedy directly for the benefit of private parties injured by violations. Thus, unlike *Cannon*, the implication of a right of action here is not necessary to provide a plenary remedy to the intended beneficiaries of the Act.

*Cannon* is also distinguishable for a second reason. In *Cannon*, the Supreme Court noted that Title IX was enacted in 1972 when the Court had been rather liberal in finding implied rights of action. The Court found that Congress expected Title IX to be interpreted in accordance with that liberal view.[42] The Commodities Exchange Act, on the other hand, was reconsidered by Congress as recently as last year when the Supreme Court had retreated from its liberal view toward implied rights of action.[43] Yet, in enacting the 1978 amendments to the Act, Congress again failed to add a section expressly providing for a private right of action despite knowledge that a number of district courts had held that the private right of action previously implied did not survive the 1974

---

§§ 78o (b)(4), 78s(h). The SEC may also seek to enjoin brokers, dealers and securities exchanges from violating the Security Exchange Act. 15 U.S.C. § 78u.

**34.** 15 U.S.C. § 78aa provides, in pertinent part, that:

"The district courts of the United States, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder."

Although 7 U.S.C. § 13a–2(2) closely resembles the language quoted above, its reach is expressly limited to actions brought by state attorneys general.

**35.** *Securities Investor Protection Corp. v. Barbour, supra*, 421 U.S. at 424, 95 S.Ct. 1733; *J.I.*

*Case Co. v. Borak, supra*, 377 U.S. at 430–31, 84 S.Ct. 1555.

**36.** Amicus Curiae Brief of the Commodities Futures Trading Commission submitted in *Smith v. Groover, supra*.

**37.** *United States v. Consumer Life Ins. Co.*, 430 U.S. 725, 752, 97 S.Ct. 1440, 52 L.Ed.2d 4 (1977) (citations omitted).

**38.** *Piper v. Chris-Craft Indus., Inc., supra*, 430 U.S. at 41 n.27, 97 S.Ct. at 949.

**39.** —— U.S. ——, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979).

**40.** 20 U.S.C. §§ 1681–86.

**41.** See —— U.S. at ——, 99 S.Ct. at 1961–1962.

**42.** *Id.* at ·· ·, 99 S.Ct. at 1958.

**43.** *Id.*

amendments.[44] *Cannon* teaches that the failure of Congress to provide for a private right of action must be viewed in light of the judicial attitude toward such rights at the time of enactment. In light of that teaching, the failure of Congress to provide for a private right of action in the 1978 amendments evidences an intent to deny such a right.

Thus, we conclude that there is no private right of action against futures commission merchants and contract markets under the Act. Since there is no private right of action under the Act, it necessarily follows that there is no private right of action under the regulations promulgated pursuant to the Act.[45]

## ANTITRUST CLAIMS

Clayton and Heinold also move for summary judgment on the antitrust claims, asserting that there is no genuine issue of fact that they did not intend to manipulate the price of May 1976 Maine potato futures contracts.

■ A party seeking summary judgment bears the burden of demonstrating the absence of any genuine issue of fact,[46] even when the motion is unopposed.[47] Clayton and Heinold have submitted excerpts of deposition testimony given by certain of their employees. Although this testimony does tend to show that Clayton and Heinold lacked the intent required for a violation of the Sherman Act, it is neither conclusive nor sufficiently clear to allow us to conclude that there is no genuine issue of fact. Clayton's employee, Delbridge, admitted that Clayton took no steps to investigate its clients' ability to deliver despite their large short position, and Heinold's vice-president, Klopfenstein, admitted that

Heinold did not take the steps that it normally would have taken to ensure that its short customers could deliver. Given the elusive nature of intent and its significance to an antitrust violation,[48] we cannot say that there is no issue of fact regarding Clayton's and Heinold's knowledge and intent.[49]

Accordingly:

1. There being no just reason for delay, the Clerk of the court is directed, pursuant to Rule 54(b), Fed.R.Civ.P., to enter final judgment:

A. In favor of the Exchange on its motions for partial summary judgment on the sixth claim of the first amended consolidated class action complaint in *National Super Spuds, Inc. v. New York Mercantile Exchange,* 76 Civ. 2375, 76 Civ. 2554, 76 Civ. 2571 and 76 Civ. 2594; the first and fourth claims of the complaint in *Incomco v. New York Mercantile Exchange,* 76 Civ. 2648; and the fourth claim of the complaint in *Leist v. Simplot,* 76 Civ. 4350;

B. In favor of Levine, Gabler and Pennisi on their motion for summary judgment on the fourth claim of the complaint in *Leist v. Simplot,* 76 Civ. 4350;

C. In favor of Clayton on its motions for partial summary judgment on the fourth claim of the first amended consolidated class action complaint in *National Super Spuds, Inc. v. New York Mercantile Exchange,* 76 Civ. 2375, 76 Civ. 2554, 76 Civ. 2571 and 76 Civ. 2594; and the first claim of the complaint in *Leist v. Simplot,* 76 Civ. 4350;

D. In favor of Heinold and Thomson on their motions for partial summary judgment on the fourth claim of the first amended consolidated class action complaint

44. 124 Cong. Rec.-Senate 10537 (remarks of Sen. Huddleston).

45. *Crane Co. v. American Standard, Inc.,* No. 77 7517 n.11 (2d Cir. Apr. 4, 1979).

46. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

47. *Id.* at 160, 90 S.Ct. 1598.

48. See *United States v. United States Gypsum Co.,* 438 U.S. 422, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978).

49. See *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir. 1978) ("[S]ummary judgment is likely to be inappropriate when the issues concern intent.").

in *National Super Spuds, Inc. v. New York Mercantile Exchange*, 76 Civ. 2375, 76 Civ. 2554, 76 Civ. 2571 and 76 Civ. 2594; the first claim of the complaint in *Leist v. Simplot*, 76 Civ. 4350; and the second claim of the complaint in *Berenson v. Simplot*, 76 Civ. 3210, to the extent that it asserts a claim under the Act.

2. Clayton's and Heinold's motions for summary judgment in their favor on all other claims against them are denied in all respects.

So ordered.