Michael GONZALEZ, Plaintiff,

v.

PAINE, WEBBER, JACKSON & CURTIS, INCORPORATED, Ron Lindner, Norman Eisner, and Robert Manta, Defendants.

No. 79 Civ. 5724 (HFW).

United States District Court, S. D. New York.

July 3, 1980.

**500**

Moser, Henkin & Winter, New York City, for plaintiff; Norman E. Henkin, Nathan F. Moser, New York City, of counsel.

Beekman & Bogue, New York City, for defendants; Martin P. Unger, Carlton R. Asher, Jr., New York City, of counsel.

## OPINION

WERKER, District Judge.

This action was commenced by the plaintiff Michael Gonzalez against the defendants Paine, Webber, Jackson & Curtis, Incorporated ("Paine Webber"), Ron Lindner, Norman Eisner, and Robert Manta for alleged violations of the federal securities laws, the rules of the National Association of Securities Dealers, Inc. ("NASD"), the Commodity Exchange Act, and New York law. This matter is before the Court on the defendants' motion to dismiss the amended complaint pursuant to Fed.R.Civ.P. 9(b), 12(b)(1) and 12(b)(6) for failure to plead fraud with sufficient particularity, for lack of subject matter jurisdiction, and for failure to state a claim upon which relief can be granted.

## FACTS

For purposes of this motion, the well-pleaded allegations of the complaint are taken as being true.

Paine Webber, a New York corporation, is a member of the principal stock and commodity exchanges in New York and other cities. Lindner, Eisner and Manta are registered representatives and employees of Paine Webber.

From July 3, 1978 to about June 20, 1979, plaintiff maintained a customer account with Paine Webber for investing in commodities. The defendants traded on plaintiff's behalf in contracts for the purchase and sale of futures in sugar and other agri-

cultural commodities. At the defendants' behest, the plaintiff's account was opened as a "discretionary" account. Before the account was opened, plaintiff made certain disclosures to the defendants concerning his financial condition, background and investment objectives. The complaint alleges that the defendants falsely represented to the plaintiff that his financial status was sufficient to qualify him as an investor in futures trading on a margin account basis when they in fact knew or should have known that his income and assets were insufficient to permit him to trade in the commodity futures market on such a basis. The complaint further alleges that the defendants misrepresented the extent of their knowledge of and ability to trade in the commodity futures market, and that the misrepresentations were made with the intent to deceive and defraud the plaintiff in order to induce him to trade in commodity futures so as to generate commissions for the defendants.

On a number of occasions, the defendants engaged in transactions on the plaintiff's behalf either without his knowledge or consent or in contravention of his directions. As a result of the defendants' actions, on certain transactions the plaintiff did not make as great a profit as he claims he should have made, and on others he suffered an outright loss. He alleges that the defendants made certain misrepresentations in carrying out these transactions, including on a number of occasions falsely representing that they were acting at his direction. Plaintiff also accuses the defendants of "scalping," "hedging," "bucketing," and "churning."

In October 1978, plaintiff advised defendants that further trades on his behalf were to be made only upon his special authorization. He claims that at one point he directed defendants to sell short twelve March 1979 sugar contracts, but the defendants, with the intent to defraud him, advised him not to sell. He followed their advice, and did not realize the full profit he otherwise would have realized.

Plaintiff subsequently took personal control of his account with Paine Webber, and was able to earn sufficient profit to cause the defendants to lower his margin requirements. Shortly thereafter, however, the defendants, with the intent to defraud the plaintiff and with knowledge that an increase in the plaintiff's margin requirements was not necessary, nevertheless increased his margin requirements retroactively. As a result, the plaintiff was required to post an additional $25,000 in cash or securities. When he was unable to do so, he was forced to liquidate his sugar contracts. Plaintiff contends that the defendants knowingly and deceitfully concealed from him the possibility of a "stop loss order," a trading device by which plaintiff could have retained his contracts with safe margins.

■ Plaintiff filed the instant action in October 1979, and defendants moved to dismiss the complaint. In submitting papers in opposition to the motion, plaintiff simultaneously filed an amended complaint which sought to provide more particulars regarding the fraud charges and which eliminated claims for damages under the Investment Advisers Act. *See Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (1979) (held, no private cause of action for damages under section 206 of Investment Advisors Act). The defendants thereafter filed the instant motion to dismiss the amended complaint. Since the original complaint has been superseded by the amended complaint, the motion to dismiss the original complaint has been rendered moot; the merits of the defendants' defenses will be considered only with respect to the amended complaint.

The amended complaint contains ten causes of action and alleges violations of the Securities Act of 1933, 15 U.S.C. § 77a *et seq.*, the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, the rules and regulations promulgated by the Securities Exchange Commission, the rules of the NASD, and the Commodity Exchange Act, 7 U.S.C. § 1 *et seq.* The amended com-

plaint also asserts claims for fraud and deceit, infliction of emotional distress, and breach of fiduciary duty, claims which must be considered under the common law of New York. The defendants' motion to dismiss is premised on their contentions that (1) the amended complaint fails to plead fraud with sufficient particularity, (2) there is no express or implied private right of action for damages under the Commodity Exchange Act, (3) the federal securities laws are not applicable to commodity futures trading accounts, whether discretionary or not, (4) there is no express or implied private right of action for damages for violations of the NASD rules, and (5) there is no pendent jurisdiction over the state claims, since the federal claims must be dismissed for the foregoing reasons.

### DISCUSSION

The question of whether an implied cause of action for damages exists under the Commodity Exchange Act (the "Act") has been a much litigated one. The district courts are fairly evenly divided on the issue, *see, e. g., Navigator Group Funds v. Shearson Hayden Stone Inc.*, 487 F.Supp. 416 (VLB) (S.D.N.Y.1980) (finding private right of action); *National Super Spuds, Inc. v. New York Mercantile Exchange*, 470 F.Supp. 1256 (S.D.N.Y.1979) (finding no private right of action); *Smith v. Groover*, 468 F.Supp. 105 (N.D.Ill.1979) (finding private right of action); and cases cited therein,[1] and apparently only one circuit court has expressly decided the question since the Act was amended in 1974 by the Commodity Futures Trading Commission Act, Pub.L. No. 93–463. In a 2-to-1 decision, the sixth circuit in *Curran v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 622 F.2d 216 (6th Cir. 1980), held that there is an implied cause of

action under the Act. The second circuit, in *Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 567 F.2d 1174, 1176 (2d Cir. 1977), stated that: "It is agreed that there is an implied cause of action under the Act for a private remedy." The court did not, however, explicitly hold that an implied right of action exists, nor did it discuss the issue any further.

It was well-settled prior to the 1974 amendments that a private right of action for violations of the Act did indeed exist. *See, e. g., Deaktor v. L. D. Schreiber & Co.*, 479 F.2d 529 (7th Cir.), *rev'd on other grounds sub nom. Chicago Mercantile Exchange v. Deaktor*, 414 U.S. 113, 94 S.Ct. 466, 38 L.Ed.2d 344 (1973); *Booth v. Peavey Co.*, 430 F.2d 132 (8th Cir. 1970). The 1974 amendments, however, created the Commodity Futures Trading Commission (the "CFTC") and established an administrative procedure by which "[a]ny person complaining of any violation of any provision of this chapter or any rule, regulation, or order thereunder by any person who is registered or required to be registered under . . . this title may" commence a proceeding before the CFTC. 7 U.S.C. § 18(a). If the CFTC determines that the Act has been violated, it may award the aggrieved party damages. *Id.* § 18(e). Decisions made by the CFTC may be appealed to the circuit courts, *id.* § 18(g), and enforced by the district courts. *Id.* § 18(f).

▋ The fact that Congress instituted an administrative procedure whereby persons aggrieved by violations of the Act could seek damages before the CFTC is a strong indication that Congress did not intend to also grant such persons a direct cause of action to be initially brought in the district courts.[2] *Fischer v. Rosenthal & Co.*, 481 F.Supp. 53, 56–57 (N.D.Tex.1979); *Na-*

---

1. In light of the many thorough opinions written on the question, the Court will not address every argument for and against an implied right of action under the Act.

2. Legislative intent is the second—and most important—of the four factors relevant to an inquiry into whether a private cause of action is to be implied from a statute. *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d

26 (1975). In *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 100 S.Ct. 242, 244, 62 L.Ed.2d 146 (U.S.1979), the Supreme Court held that "what must ultimately be determined is whether Congress intended to create the private remedy asserted . . . ." *See also Touche Ross & Co. v. Redington*, 442 U.S. 560, 575–76, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979).

*tional Super Spuds, supra,* 470 F.Supp. at 1260; *Alkan v. Rosenthal & Co.,* Comm.Fut. L.Rep. (CCH) ¶ 20,797, at 23,252 (S.D.Ohio Feb. 28, 1979); *Berman v. Bache, Halsey, Stuart, Shields, Inc.,* 467 F.Supp. 311, 322 (S.D.Ohio 1979); *Bartels v. International Commodities Corp.,* 435 F.Supp. 865, 868–69 (D.Conn.1977) (Newman, J.).[3] Moreover, as Judge MacMahon observed in *National Super Spuds,* the conclusion that Congress intended "to deny a private right of action under the Act . . . is reinforced by the fact that Congress was informed of the need for a private right of action under the Act but rejected a bill which would have expressly established such a right of action." 470 F.Supp. at 1260 (footnotes omitted). *See also Fischer v. Rosenthal & Co.,* 481 F.Supp. at 56.

■ A direct cause of action should also not be implied because it would be inconsistent with the purposes of the Act.[4] The 1974 amendments gave the CFTC "exclusive jurisdiction with respect to accounts, agreements . . . , and transactions involving contracts of sale of a commodity for future delivery . . . ." 7 U.S.C. § 2. Although this provision was intended to oust other federal agencies, such as the Securities Exchange Commission, of jurisdiction over commodities transaction and was not intended to affect the jurisdiction of the courts,[5] it is nevertheless clear that Congress intended the CFTC to have the primary and overall responsibility for regulating commodities transactions. The CFTC is empowered to hear and rule on claims for damages, to impose administrative sanctions and to bring actions in district courts to enjoin violations or to compel compliance with the Act and the regulations promulgated thereunder. 7 U.S.C. §§ 7b, 9, 13a, 13a–1. The implication of a

direct cause of action would not be consistent with this overall scheme, for individuals would then be able to circumvent the procedures established by the Act. In addition, the implication of a direct cause of action is certainly not necessary to further the purposes of the Act, for an aggrieved individual can invoke the reparations proceeding to recover any damages. *See National Super Spuds, supra,* 470 F.Supp. at 1260–61; *Berman, supra,* 467 F.Supp. at 322–23. *See also Santa Fe Industries, Inc. v. Green,* 430 U.S. 462, 477, 97 S.Ct. 1292, 1303, 51 L.Ed.2d 480 (1977) ("[A] private cause of action . . . should not be implied where it is 'unnecessary to ensure the fulfillment of Congress' purposes' in adopting [an] Act.").

■ In 1978, Congress made some additional amendments to the Act by enacting the Futures Trading Act of 1978, Pub.L. No. 95–405. The Senate Report accompanying those amendments lists the remedies available under the Act and sets forth the purposes underlying the creation of the CFTC:

> The Commodity Exchange Act provides many customer protections and remedies. The Act directs the [CFTC] to promulgate and administer a regulatory program that includes registration of commodity professionals, segregation of customers' funds by futures commission merchants, establishment of dual trading guidelines, creation of a procedure for the adjudication of reparation claims, monitoring exchange arbitration procedures and disciplinary actions, and licensing of industry self-regulatory futures associations. Moreover, customers are afforded protection through the [CFTC's] power to sue directly for injunctive relief and to invoke a full range of administrative

---

**3.** The courts that have sustained an implied cause of action under the act interpret the CFTC reparations procedures as being "a supplement to, rather than a substitute for, the existing private right of action." *Smith v. Groover,* 468 F.Supp. at 114. *Accord, Curran v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 622 F.2d at 232; *Navigator Group Funds v. Shearson Hayden Stone, Inc.,* 487 F.Supp. 416.

**4.** Whether implication of a private right of action would be consistent with the underlying purposes of the legislative scheme in question is the third of the four *Cort v. Ash* factors.

**5.** Section 2 also provides: "Nothing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State." 7 U.S.C. § 2.

remedies where appropriate to curb unlawful behavior.

The [CFTC] was created in order to assure that a single expert agency would have the responsibility for developing a coherent regulatory program encompassing futures trading and related activities. Therefore, Congress has vested in the [CFTC] exclusive jurisdiction to build upon the foundation provided by the Commodity Exchange Act in erecting a sound and strong Federal regulatory policy governing futures trading.

S.Rep. No. 95–850, 95th Cong., 2d Sess. 12–13, *reprinted in* 1978 U.S.Code Cong. & Admin.News, pp. 2087, 2100–01. The "conspicuous absence" of a direct cause of action from the list of remedies is a strong indication that a direct cause of action can no longer be implied. *Berman, supra,* 467 F.Supp. at 322. *See also Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. at 19, 100 S.Ct. at 247 ("[I]t is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it.").[6] The report also evinces the importance of the CFTC to Congress' overall scheme for regulating commodities transactions. As the court in *Berman* observed, "[A] plethora of private actions in the federal district court would deprive the CFTC of the opportunity 'to build upon the foundation provided by the Commodity Exchange Act in erecting a sound and strong Federal regulatory policy governing futures trading.'" 467 F.Supp. at 323, quoting S.Rep. No. 95–850, *supra.*

■ In accordance with the above, I hold that no direct cause of action for damages can be implied under the Act.

■ Plaintiff also relies on the federal securities laws and the NASD rules, arguing that discretionary commodities trading accounts are "investment contracts" covered by the securities laws, *see SEC v. W. J. Howey Co.,* 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946); *but see Curran v. Merrill Lynch, Pierce, Fenner & Smith, supra,* and that an implied cause of action for damages exists for violations of the NASD rules. Even assuming plaintiff is correct in both regards, his claims must nevertheless be dismissed in light of the 1974 amendments to the Act. Because the amendments had the effect of eliminating an implied direct cause of action for damages resulting from commodities transactions and because the amendments were intended to vest the CFTC with primary responsibility for regulating commodities transactions, the plaintiff cannot make his way into federal court at this juncture on the argument that the securities laws apply to commodities transactions. As Judge Newman held in *Bartels* :

> [W]hatever private right of action might have been available under S.E.C. Rule 10b–5 prior to the Act for a customer injured in a commodity options transaction has now been clearly displaced by the new customer reparations procedure. The implied . . . right of action under Rule 10b–5, though enunciated by the courts rather than by Congress explicitly, is a matter of statutory construction. By enacting the [1974 amendments], Congress has made clear that it does not intend the securities laws to apply to commodities transactions.

435 F.Supp. at 869, *citing* H.R.Rep. No. 93–975, 93d Cong., 2d Sess. 71 (1974). *Accord, Fairchild, Arabatzis & Smith, Inc. v. Prometco (Produce & Metals) Co.,* 470 F.Supp. 610, 614 (S.D.N.Y.1979); *Hofmayer v. Dean Witter & Co.,* 459 F.Supp. 733, 737 (N.D.Cal.1978); *E. F. Hutton & Co. v. Schank,* 456 F.Supp. 507, 512–15 (D.Utah 1976).

---

**6.** At the time the 1978 amendments were being enacted, Congress was aware of the fact that several district courts had held that the 1974 amendments had, in effect, eliminated the implied cause of action under the Act. *See Navigator Group Funds v. Shearson Hayden Stone, Inc.,* 487 F.Supp. 416 *citing* 124 Cong.Rec. 10537, 95th Cong., 2d Sess. (1978) (remarks of Sen. Huddleston); *Smith v. Groover,* 468 F.Supp. at 114, *citing* 124 Cong.Rec. 10537, supra. In view of Congress' knowledge that the courts were striking down an implied cause of action, the fact that Congress chose not to amend the Act to expressly provide for a direct cause of action is significant.

Although plaintiff alleges violations of the securities laws and NASD rules, it is clear that his claims are based on commodities transactions and the defendants' alleged mishandling of his commodities account. For the reasons stated above, plaintiff has no implied cause of action under the Act. His proper course of action is to commence a reparations proceeding before the CFTC. I will not permit the plaintiff to bypass the CFTC proceedings and to circumvent the provisions of the Act by allowing him to prosecute his claims in this court at this juncture under the theory that the securities laws and NASD rules have been violated.

Because all of the federal claims are being dismissed, the pendent state claims must also be dismissed. *Nolan v. Meyer*, 520 F.2d 1276, 1280 (2d Cir.), *cert. denied*, 423 U.S. 1034, 96 S.Ct. 567, 46 L.Ed.2d 408 (1975).

### CONCLUSION

In accordance with the above, the motion to dismiss is hereby granted.[7] The amended complaint is dismissed in its entirety for lack of subject matter jurisdiction.

SO ORDERED.

Charles W. Mulcahy, Jr., Boston, Mass., for petitioners; Sidney Weinberg, attorney for Corporation.

---

**7.** In light of this result, the Rule 9(b) portion of the motion need not be reached.