**Joseph STROBL, Plaintiff,**

v.

**NEW YORK MERCANTILE EX-CHANGE et al., Defendants.**

**No. 79 Civ. 1834 (LFM).**

United States District Court, S.D. New York.

April 12, 1983.

---

Cahill Gordon & Reindel by William E. Hegarty and Peter Leight, New York City, for defendant New York Mercantile Exchange.

Charfoos, Christensen, Gilbert & Archer, P.C., Detroit, Mich. by Peter E. DeBlasio, New York City, for plaintiff.

MacMAHON, Senior District Judge.

Defendant New York Mercantile Exchange ("the Exchange") moves to reargue its motion to dismiss the complaint for failure to state a claim upon which relief may be granted, Rule 12(b)(6), Fed.R.Civ.P., or, in the alternative, to dismiss the complaint. Plaintiff moves to reinstate his claims under the Commodity Exchange Act ("CEA"), as amended by the Commodity Futures Trading Commission Act ("CFTCA").

This action against numerous defendants was commenced on April 6, 1979. The complaint makes five claims in six "counts." Count 1 states that "this action is brought ... under" Sections 1 to 3 of the Sherman Act, 15 U.S.C. §§ 1–3; "Section 13 of the Clayton Antitrust Act, 38 Stat. 730 (1914) 15 U.S.C.A. Sec. 13 (1914) [sic] as Amended," which we understand as an attempt to cite Section 4 of the Clayton Act, 15 U.S.C. § 15;[1] Sections 4 and 9 of the CEA, 7 U.S.C. §§ 6–6p & 13–13c; "the rules and regulations promulgated by the Commodities [sic] Futures Trading Commission pursuant to the [CEA], [and] the By-Laws, Rules and Regulations of [the Exchange] and the Common Law." Count 1 also contains many allegations of wrongful conduct.

Each succeeding count incorporates by reference the preceding counts. Count 2 alleges that defendants' conduct violated Sections 1 and 3 of the Sherman Act and the common law, Count 3 that defendants' conduct violated Section 2 of the Sherman Act and the common law, and Count 4 that defendants' conduct violated Sections 5 and 9 of the CEA. Count 5 claims that various defendants, including the Exchange, "negligently failed to maintain an orderly market for trading" of April and May 1976 Maine potato futures contracts, "in violation and in disregard of the duties imposed upon [those defendants] under the terms and provisions of the [CEA]." Count 6 alleges that the failure to maintain an orderly market was "in violation and intentional disregard of the duties imposed upon said Defendants under the terms and provisions of the [CEA]."

Jurisdiction is invoked under Section 4 of the Clayton Act, 15 U.S.C. § 15; 28 U.S.C. § 1337; "the provisions of the Act" and pendent jurisdiction.

On February 6, 1980, we granted in part a motion by several defendants, including the Exchange, to dismiss the complaint. Count 4 was dismissed in its entirety, and Count 1 was dismissed to the extent that it relies on the CEA. We left standing the remainder of the complaint because the motion papers did not address the sufficiency of the other claims. The Exchange timely moved for reargument of the motion to dismiss, or, in the alternative, for dismissal of the complaint.

The February 6 decision was based on our holding in *National Superspuds, Inc. v. New York Mercantile Exchange,* 470 F.Supp. 1256 (S.D.N.Y.1979), that no private right of action exists under the CEA. This holding was reversed by the Second Circuit in *Leist v. Simplot,* 638 F.2d 283 (2d Cir.1980), and the Court of Appeals' holding was affirmed by the Supreme Court in *Merrill Lynch, Pierce, Fenner & Smith v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). Hence, plaintiff moves to reinstate his claims based on the CEA.

The Exchange does not oppose plaintiff's motion. We therefore grant plaintiff's motion to reinstate his claims under the CEA. We grant the Exchange's motion for reargument of its motion to dismiss and will now consider that motion.

## I. *The Antitrust Claims.*

### A. *Bad Faith.*

The Exchange argues that all the antitrust claims must be dismissed for failure to allege bad faith. The parties agree that an allegation of bad faith is necessary to sustain plaintiff's antitrust claims. *Cargill, Inc. v. Board of Trade,* 164 F.2d 820, 823 (7th Cir.1947), *cert. denied,* 333 U.S. 880, 68 S.Ct. 912, 92 L.Ed. 1155 (1948); *P.J. Taggares Co. v. New York Mercantile Exchange,* 476 F.Supp. 72, 78 (S.D.N.Y.1979). The parties disagree as to whether plaintiff has in fact pleaded bad faith. In general, "bad faith" means "ulterior motive." *See id.* at 77 n. 22. Plaintiff alleges that the Exchange knew of the conspiracy and intentionally violated the CEA and its own rules in order to further the conspiracy. Plaintiff alleges further that defendants "withheld certain information ... that should have been made known to the pub-

---

1. Section 13 of the Clayton Act concerns subpoenas of witnesses in suits by the United States; 15 U.S.C. § 13 concerns price discrimination.

lic" (¶ 52(f)).[2] If these allegations are taken as true, the conclusion fairly may be reached that the Exchange had an "ulterior motive." We therefore hold that the complaint sufficiently pleads bad faith.

### B. *Sherman Act §§ 1 & 3.*

The Exchange argues that plaintiff's claims under Sections 1 and 3 of the Sherman Act must be dismissed for failure to plead sufficient facts to allege a conspiracy or a violation of the antitrust laws. *See Larry R. George Sales Co. v. Cool Attic Corp.,* 587 F.2d 266, 273 (5th Cir.1979).

 A district court should dismiss a claim only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). A motion to dismiss a claim for insufficiency should rarely be granted, especially in antitrust cases where proof of the conspiracy usually is in the hands of the conspirators. *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976); *Eye Encounter, Inc. v. Contour Art, Ltd.,* 81 F.R.D. 683, 686 (E.D.N.Y.1979).

 Liberally read, the factual allegations against the Exchange[3] are that it withheld information (¶ 52(f)), and, knowing of the conspiracy, acquiesced in the actions of the other defendants, even to the extent that the Exchange breached its duties under the CEA (¶ 53(e), (f), (h) & (j)). There is no allegation of an explicit agreement between the Exchange and the other conspirators,[4] so the question here is whether the complaint sufficiently alleges a tacit agreement. As with any conspiracy, a tacit agreement is sufficient to show a conspiracy in violation of the Sherman Act, and it may be established by the conduct of the parties. *United States v. Paramount Pictures, Inc.,* 334 U.S. 131, 142, 68 S.Ct. 915, 922, 92 L.Ed. 1260 (1948); *American Tobacco Co. v. United States,* 328 U.S. 781, 809–10, 66 S.Ct. 1125, 1138–39, 90 L.Ed. 1575 (1946); *United States v. Chas. Pfizer & Co.,* 367 F.Supp. 91, 99 (S.D.N.Y.1973).

 We note also that acquiescence may supply the intent necessary to a finding of conspiracy, *United States v. Allied Asphalt Paving Co.,* 451 F.Supp. 804, 814 (N.D.Ill.1978); *Feminist Women's Health Center, Inc. v. Mohammed,* 415 F.Supp. 1258, 1267 (N.D.Fla.1976), *cert. denied,* 444 U.S. 924, 100 S.Ct. 262, 62 L.Ed.2d 180 (1979), and that plaintiff is entitled to employ the facts and circumstances of the case as a whole to prove his claim. *American Tobacco Co. v. United States, supra,* 328 U.S. at 809–10, 66 S.Ct. at 1138–39; *United States v. Chas. Pfizer & Co., supra,* 367 F.Supp. at 99. In light of the above legal standards, plaintiff's factual allegations are sufficient to withstand this motion to dismiss.

### C. *Sherman Act § 2.*

 The Exchange argues that plaintiff has not alleged that the Exchange possessed specific intent to conspire to monopolize the relevant market.[5] Specific intent is, of course, an essential element of a claim of conspiracy to monopolize. *Bowen v. New York News, Inc.,* 522 F.2d 1242, 1258 (2d Cir.1975), *cert. denied,* 425 U.S. 936, 96

---

2. Plaintiff also alleges that defendants disseminated "false, misleading and knowingly inaccurate market information" (¶ 52(e)). However, this averment of fraud fails to satisfy Rule 9(b), Fed.R.Civ.P. See Part III(B)(2) of this opinion.

3. Certain paragraphs of the complaint allege that "said Defendants" committed particular acts. However, many of the alleged acts could not have been committed by the Exchange. For example, the Exchange held no futures contracts and, thus, could not have defaulted on any contracts (¶ 52(d)).

4. We assume, *arguendo,* that the complaint sufficiently alleges a conspiracy among the other defendants.

5. Count 3 charges that the defendants "monopolized or attempted to monopolize and combined or conspired . . . to monopolize" the relevant market. Because the Exchange is not a competitor in the market, it cannot monopolize or attempt to monopolize the market and, thus, Count 3 can be understood as charging the Exchange only with conspiring to monopolize.

S.Ct. 1667, 48 L.Ed.2d 177 (1976). However, all that is required for a plaintiff to survive a motion to dismiss a monopolization claim is "an allegation of some conduct permitting an inference of specific intent to monopolize." *Plumbers & Steamfitters Local 598 v. Morris,* 511 F.Supp. 1298, 1308 (E.D. Wash.1981). *See also Optivision, Inc. v. Syracuse Shopping Center Assoc.,* 472 F.Supp. 665, 680 (N.D.N.Y.1979); *Brager & Co. v. Leumi Securities Corp.,* 429 F.Supp. 1341, 1346 (S.D.N.Y.1977), *aff'd without op.,* 646 F.2d 559 (2d Cir.1980), *cert. denied,* 451 U.S. 987, 101 S.Ct. 2322, 68 L.Ed.2d 845 (1981). The same would be true of a claim of conspiracy to monopolize. Plaintiff has alleged sufficient facts relevant to the issue of the Exchange's specific intent to survive a motion to dismiss. *See* Part I(A) of this opinion.

## II. *CEA Claims.*

### A. *Bad Faith.*

■ The Exchange's first argument in support of its motion to dismiss plaintiff's CEA claims is that plaintiff has failed to allege bad faith on the part of the Exchange. It is clear that, absent bad faith, the Exchange may not be held liable for discretionary actions taken pursuant to its duties under the CEA. *Daniel v. Board of Trade,* 164 F.2d 815, 819–20 (7th Cir.1947); *P.J. Taggares Co. v. New York Mercantile Exchange, supra,* 476 F.Supp. at 76. What is less clear from the cases is what constitutes an allegation of bad faith. In *Daniel v. Board of Trade, supra,* the allegations set out in the margin[6] were held sufficient to

state a claim. On the other hand, in *P.J. Taggares Co. v. New York Mercantile Exchange, supra,* 476 F.Supp. at 77 & n. 22, an allegation of "discriminatory" conduct was held not sufficient.

■ We hold that the complaint here sufficiently alleges the bad faith required by the CEA for the reasons given in Part I(A) of this opinion.

### B. *Rule 9(b).*

■ The Exchange's second argument for dismissal of the CEA claims is that the complaint does not allege bad faith with the particularity required by Rule 9(b), Fed.R. Civ.P. Rule 9(b) provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The question before us, then, is whether "bad faith" is an allegation more similar to "fraud and mistake" or to "malice, intent, knowledge, and other condition of mind." We have found no case in point. However, because "bad faith" means "ulterior motive," it is plain that bad faith is a condition of mind similar to malice or intent and therefore need not be pleaded with particularity but "may be averred generally."

In the only commodities case cited by the Exchange, *P.J. Taggares Co. v. New York Mercantile Exchange, supra,* 476 F.Supp. at 77, the court held that plaintiffs had not alleged bad faith at all, and, thus, the

---

6. "[D]efendants 'wilfully, maliciously, and for their own personal gain through profits accruing to them through their individual brokerage houses continued said Board of Trade in operation when the open and free and orderly market had ceased to exist. * * * [S]aid Regulations were adopted for the purpose of continuing the operations on the Board of Trade for the personal advantage and gain of the defendants as hereinbefore alleged and for the added purpose of attempting to protect themselves against the possible liability which might be assessed against them by reason of the antitrust action which had been brought by Cargill, Inc. . . . . ' " *Daniel v. Board of Trade, supra,* 164 F.2d at 818, 820. In *Smith v. Groover,* 468

F.Supp. 105, 118 (N.D.Ill.1979), the complaint alleged that the defendant Chicago Board of Trade " 'knew, or should have known of [bucketing] by its members' and 'failed and neglected to report and, in fact, concealed violations of the Commodity Act, the Rules and Regulations of the CFTC and its own By-Laws, Rules and Regulations by the defendant floor brokers and other members.' " These allegations withstood a motion to dismiss for failure to state a claim upon which relief may be granted, although the defendant's argument was not that the allegations were insufficient to charge bad faith but rather that in order to perform its " 'quasi public' " responsibilities the Board must be immunized from private damage suits.

court's suggestion that the particularity requirement of Rule 9(b) applied is dicta.

In *Daniel v. Board of Trade, supra,* 164 F.2d at 820, cited in *Taggares,* the Seventh Circuit Court of Appeals held that "in the absence of such infidelity to their trust by [employees and agents of defendant Chicago Board of Trade] as to amount to fraud," the plaintiff could not prevail. The court then asked whether "the allegations of the amended complaint [were] sufficient to charge fraud" and ruled that the allegations satisfied Rule 9(b). The court did not explain why the "infidelity to ... trust" must rise to the level of fraud, rather than some other standard. Nor did the court examine the language of Rule 9(b). We respectfully decline to follow the Seventh Circuit rule.

## III. *Common Law Claims.*

### A. *Preemption.*

The Exchange argues that the common law claims are preempted by the CEA. However, this is far from clear. Section 2 of Title 7, enacted as part of the CFTCA, does provide in part that "the [Commodity Futures Trading] Commission shall have exclusive jurisdiction with respect to ... transactions involving contracts of sale of a commodity for future delivery, traded or executed on a contract market," but it also states "[n]othing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State."

The legislative history is silent as to preemption of common law claims. It seems, however, that the primary concern of congress was preemption of federal and state regulatory schemes. *See generally* Johnson, *The Commodity Futures Trading Commission Act: Preemption as Public Policy,* 29 Vand.L.Rev. 1 (1976). We see nothing in the statutory language, legislative history or purpose of the CFTCA indicating a congressional intent to preempt all common law claims. The one court which has also addressed this question reached the same conclusion. *See Witzel v. Chartered Systems Corp.,* 490 F.Supp. 343, 347–48 (D.Minn.1980).

We note that it is possible that a common law claim may be inconsistent with the regulatory scheme of the CFTCA. If, upon full development of the facts, that is the case, recovery would be barred. However, as to the common law claims which we uphold below, we cannot say "beyond doubt that plaintiff can prove no set of facts in support of [those claims] which would entitle him to relief." *Conley v. Gibson, supra,* 355 U.S. at 45–46, 78 S.Ct. at 102.

### B. *Specific Claims.*

The nature of plaintiff's common law claims is not apparent. Count 1 of the complaint states that "this action is brought ... under [*inter alia*] the Common law." Counts 2 and 3 claim that defendants' alleged conduct, outlined in Count 1, violated the Sherman Act "and the Common Law." Count 5 claims that the Exchange and other defendants negligently violated the CEA, and Count 6 claims that this violation was intentional. But nowhere in the complaint or in either of his memoranda of law in opposition to this motion has plaintiff cited a case or otherwise indicated the nature of the common law claims he makes. Thus, it has fallen upon us to research New York common law, at taxpayer expense, in order to determine what claims the complaint does and does not make.

We consider the following causes of action relevant:

1. *Conspiracy:* We note initially that under New York law, a defendant may be held liable in tort for conspiracy to do any unlawful thing or to do a lawful thing in an unlawful manner. *See Arlinghaus v. Ritenour,* 622 F.2d 629, 639 (2d Cir.), *cert. denied,* 449 U.S. 1013, 101 S.Ct. 570, 66 L.Ed.2d 471 (1980). As noted earlier, plaintiff has pleaded facts sufficient to allege a conspiracy.

2. *Fraud:* The only allegation of fraud in the complaint is ¶ 52(e), which states:

That said Defendants and other persons unknown to the Plaintiff and well known

to the Defendants, delivered for transmission through the mails and in interstate commerce by telephone and other means of communication, false, misleading and knowingly inaccurate market information concerning Maine potatoes. This averment of fraud lacks the particularity required by Rule 9(b), Fed.R.Civ.P., and this claim must be dismissed.

3. *Intentional interference with contractual relationship:* The elements of this tort are: a valid contract between plaintiff and another; defendant's knowledge of the contract; defendant's intentional procurement of breach of that contract by the other; and damages. *Israel v. Wood Dolson Co.,* 1 N.Y.2d 116, 120, 134 N.E.2d 97, 99, 151 N.Y.S.2d 1, 5 (1956). It appears that the motivation behind defendant's action must be malicious, as opposed to based on bona fide economic considerations. *Williamson, Picket, Gross, Inc. v. 400 Park Avenue Co.,* 47 N.Y.2d 769, 770–71, 391 N.E.2d 296, 296, 417 N.Y.S.2d 460, 460 (1979). Plaintiff sufficiently alleges intentional interference with his futures contracts.

4. *Negligence:* A claim of negligence against an exchange requires an allegation of bad faith. *P.J. Taggares Co. v. New York Mercantile Exchange, supra,* 476 F.Supp. at 77–78. As we have ruled, plaintiff has alleged bad faith and his negligence claim must therefore be upheld.

5. *Prima facie tort:* In New York, prima facie tort is the intentional infliction of temporal harm that cannot be classified as any known tort. *Long v. Beneficial Finance Co.,* 39 A.D.2d 11, 14, 330 N.Y.S.2d 664, 668 (1972). It follows from this that a claim which sounds in a known tort cannot constitute a claim in prima facie tort. *Id.* Because plaintiff successfully has claimed intentional interference with contractual relationship and negligence, his claim of prima facie tort must be dismissed.

Accordingly, plaintiff's motion to reinstate his CEA claims is granted. Defendant New York Mercantile Exchange's motion to dismiss for insufficiency is granted as to plaintiff's common law claims of fraud and prima facie tort. Defendant's motion is denied as to plaintiff's claims of violations of the Sherman and Clayton Acts and the CEA, and the torts of intentional interference with contractual relationship and negligence.

So ordered.