Rosemary SHELLEY, Plaintiff,

v.

Howard NOFFSINGER and Madda Trading Company, a Delaware corporation, Defendants.

No. 80 C 4335.

United States District Court, N. D. Illinois, E. D.

April 15, 1981.

F. John Cushing, Ambrose & Cushing, Chicago, Ill., for plaintiff.

Joel J. Bellows and Charles B. Bernstein, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

The matter at bar involves purported violations of the Commodity Exchange Act, as amended by the Commodity Futures Trading Commission [CFTC] Act of 1974, 7 U.S.C. § 6b. The plaintiff, in addition, seeks in a pendent state claim to recover for the defendants' alleged breach of their common law fiduciary duty to her. Subject matter jurisdiction with respect to the plaintiff's federal claim properly lies pursuant to 28 U.S.C. § 1337. *Hofmayer v. Dean Witter & Co., Inc.,* 459 F.Supp. 733, 738 (N.D.Cal.1978); *Gould v. Barnes Brokerage Co., Inc.,* 345 F.Supp. 294, 295 (N.D.Tex. 1972).

Rosemary Shelley, the plaintiff herein, contends in Count I of her complaint that the defendants, registered commodity brokers/dealers within the State of Illinois: (a) "churned" her account, i. e. traded excessively in the account; and (b) purchased and sold volatile and speculative commodities contracts with the knowledge that such transactions were not in keeping with her financial needs and investment objectives. As to this latter point, Ms. Shelley further alleges that the defendants knew or should have known that her investment objectives were in stable, commodity contracts, to be used as a means of generating income upon which she intended to live. In Count II of her complaint, the plaintiff argues that the defendants' actions also constituted a breach of the common law fiduciary duty they [the defendants] owed to her.

Presently before the court is the defendants' motion for dismissal of the plaintiff's complaint. In support of said motion, several grounds for dismissal have been advanced.

### Count I

#### A. Statute of Limitations

The defendants first contend that Count I of the plaintiff's complaint must be dismissed as untimely, because it is barred by the two year statute of limitations for reparations claims set forth in the Commodity Exchange Act, as amended. 7 U.S.C. § 18(a). As regards this contention of the defendants, however, it first must be noted that the claim raised in Count I is for statutory damages under the Commodity Exchange Act, as such was amended in 7 U.S.C. § 6b—Contracts designed to defraud or mislead. No statute of limitations is set forth in that provision.

■ That there was a private right of action for enforcement of the antifraud provisions of the Commodity Exchange Act, as they existed prior to the 1974 amendments, is well established. *Booth v. Peavey Company Commodity Services,* 430 F.2d 132, 133 (8th Cir. 1970); *Arnold v. Bache & Co., Inc.,* 377 F.Supp. 61, 65 (M.D.Pa.1973); *Goodman v. H. Hentz & Co.,* 265 F.Supp. 440, 447 (N.D.Ill.1967). It also is well set-

tled that this implied right of action survived the 1974 amendments to the Commodity Exchange Act. *Smith v. Groover*, 468 F.Supp. 105, 114 (N.D.Ill.1979); *R. J. Hereley & Son Co. v. Stotler & Co.*, 466 F.Supp. 345, 347–48 (N.D.Ill.1979); *Hofmayer v. Dean Witter & Co., Inc., supra* at 737–38. *See also Ames v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 567 F.2d 1174, 1176 (2d Cir. 1977). *Cf.* Remarks of Sen. Herman Talmadge, 120 Cong.Rec. 30459 (Sept. 9, 1974) (vesting of civil and criminal authority in the [CFTC] is not intended to interfere with the courts in any way.). In this regard, it has been specifically held that the 1974 amendments to the Commodity Exchange Act were not intended by Congress to interfere with the pre-1974 judicial interpretations of an implied private right of action. *E. g., Hofmayer v. Dean Witter & Co., Inc., supra* at 737–38. Indeed, the statute itself explicitly states that "[n]othing in this section shall supersede or limit the jurisdiction conferred on courts of the United States or any State." 7 U.S.C. § 2.

■ Thus, neither the legislative history, the statute nor the cases interpreting 7 U.S.C. § 18 require a finding that § 18 is the exclusive remedy available to an aggrieved customer. *Smith v. Groover, supra* at 114; *R. J. Hereley & Son Co. v. Stotler & Co., supra* at 347. Actions for violations of 7 U.S.C. § 6b have not been deemed ones requiring the CFTC's special expertise. On the contrary, such actions have been viewed as ones for fraud; actions for which the courts are generally considered the appropriate forum. *R. J. Hereley & Son Co. v. Stotler & Co., supra* at 348; *Hofmayer v. Dean Witter & Co., Inc., supra* at 738. Although there have been holdings questioning this interpretation, *National Super Spuds, Inc. v. New York Mercantile Ex-*

*change,* 470 F.Supp. 1256, 1259–60 (S.D.N.Y.1979); *see Rivers v. Rosenthal & Co.*, 634 F.2d 774 (5th Cir. 1980), the majority position continues to be that an implied private right of action exists for violations of the Commodity Exchange Act, as amended. *See National Super Spuds, Inc. v. New York Mercantile Exchange, supra* at 1259 n.11.

The defendants, however, argue further that, even if the § 18 two year statute of limitations on proceedings for reparations is not looked upon as controlling, it still must be considered instructive as to the intent of Congress regarding the limitations period to be applied in common law actions brought under 7 U.S.C. § 6b. 7 U.S.C. § 18, though, provides only for administrative relief. *R. J. Hereley & Son Co. v. Stotler & Co., supra* at 347. Accordingly, a § 18 reparations proceeding is of a different character and nature than formal judicial proceedings.

Because that is true, this court believes that the situation at bar can more appropriately be viewed as one in which Congress created a federal right, but was silent as to a specific statute of limitations to govern actions brought for enforcement of that right. In this type of situation, it is well settled that, absent special circumstances not present here, courts are to apply that statute of limitations of the forum state governing the state law most analogous to the federal right being asserted.[1] *Chevron Oil Co. v. Huson*, 404 U.S. 97, 104, 92 S.Ct. 349, 354, 30 L.Ed.2d 296 (1971); *United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 701–04, 86 S.Ct. 1107, 1111–1112, 16 L.Ed.2d 192 (1966); *Holmberg v. Armbrecht*, 327 U.S. 392, 395, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946); *Sackett v. Beaman*, 399 F.2d 884, 890 (9th Cir. 1968).

1. Many courts have addressed themselves to the lack of uniformity that has resulted from this practice. Nonetheless, where no statute of limitations has been provided in the relevant federal statute, the courts have been reluctant to create one. There has, very simply, been strong hesitation on the part of the courts to invent what in essence would be a new federal common law in situations where Congress either specifically rejected national uniformity and instead provided for the application of state limitation periods, *Chevron Oil Co. v. Huson*, 404 U.S. 97, 104, 92 S.Ct. 349, 354, 30 L.Ed.2d 296 (1971), or where such lack of uniformity would be unlikely to frustrate Congressional policy in any important way, *United Auto Workers v. Hoosier Cardinal Corp.*, 383 U.S. 696, 702, 86 S.Ct. 1107, 1112, 16 L.Ed.2d 192 (1966).

In private actions brought for violations of 15 U.S.C. § 78j(b) [§ 10(b) of the Securities Exchange Act of 1934] and Rule 10b–5, the statute of limitations deemed controlling generally is the most analogous limitations provision of the forum state. *Parrent v. Midwest Rug Mills, Inc.*, 455 F.2d 123, 125 (7th Cir. 1972). In the absence of a corresponding state commodity fraud statute, it has been held in this district that the statute of limitations provided by local securities laws should be utilized. *Smith v. Groover*, 468 F.Supp. 105, 119–120 (N.D.Ill. 1979) (Grady, J.). This conclusion was based both upon the "similar purposes" of the respective statutes and upon the court's belief that "the three year limitation period 'best effectuate[d]' the policies underlying the [Commodities Exchange Act]." *Id.* at 120.

In light of *Smith*, this court believes that the three year limitations provision in the Illinois securities laws, Ill.Rev.Stat. ch. 121½, § 137.13, should be applied in the case at bar, and accordingly that plaintiff Shelley's complaint must be considered timely. Although the 1974 amendments to the Commodity Exchange Act were designed to avoid the overlapping and duplicative regulation which might result from application of diverse and often conflicting state and federal laws, *State Regulation of Commodity Options Preempted*, CFTC Interpretive Letter No. 76–19, CCH Comm.Fut.L.Rep. ¶ 20,213 (Sept. 29, 1976), when the analysis performed by the Supreme Court in *United Auto Workers v. Hoosier Cardinal Corp.*, *supra*, 383 U.S. at 701–04, 86 S.Ct. at 1111–1112, is utilized, it can be seen that the lack of uniformity resulting from application of state statutes of limitation would not, in this circumstance, significantly or unduly frustrate Congressional policy concerning national regulation of commodities trading.[2]

**B. Failure to State a Claim**

In the alternative, the defendants charge that Count I fails to state a claim for relief for churning because the plaintiff has not alleged that the defendants had sufficient control over her trading account. In this regard, the defendants correctly note that a dealer must be shown to have had extensive control over the transactions in the plaintiff's account before a finding that the account had been churned can properly be made. *See* Note, *Churning by Securities Dealers*, 80 Harv.L.Rev. 869 (1967).

As to this point, however, it also must be noted that churning actions are no longer limited to accounts which are purely or formally discretionary in nature. *Norris & Hirschberg, Inc.*, 21 SEC 865, 890 (1946); *E. H. Rollins & Sons, Inc.*, 18 SEC 347, 380 n.48 (1945). Because that is true, in order to hold a dealer liable for overtrading, it is not necessary to first find that he had formal discretionary power with respect to the plaintiff's trading account. Rather, the essential question to be resolved is whether the dealer occupied such a status in respect to the customer that he may reasonably be held responsible for any of the excessive trading complained of. *Thomas & McKinnon, Inc.*, 35 SEC 451, 454 (1953); *E. H. Rollins & Sons, Inc.*, *supra* at 380. This is a question of fact, requiring inquiry into the particular circumstances of the parties' relationship.[3] *E. H. Rollins & Sons, Inc.*, *supra* at 380.

Because, though, the essence of a churning claim is not a particular trade or

---

2. As regards the Commodity Futures Trading Commission Act of 1974, the specific concern of Congress appears to have been the furtherance of "fair practice and honest dealing on the commodity exchanges and [provision of] a measure of control over those forms of speculative activity which often demoralize the markets to the injury of producers, consumers and the exchanges themselves." Remarks of Sen. Herman Talmadge, 120 Cong.Rec. 30548 (Sept. 9, 1974).

3. Circumstances reflecting upon the extent of control exercised by a dealer include the "naivete" or level of experience of the customer regarding the nature and operations of the securities business, and also the confidence placed by the customer in the dealer. *Newburger, Loeb & Co., Inc. v. Gross*, 563 F.2d 1057, 1068–70 (2d Cir. 1977); *Norris & Hirschberg, Inc.*, 21 SEC 865, 869–70 n.19 (1946).

group of trades, but rather is the overall amount of trading in the customer's account in light of such considerations as market conditions, size of commissions and sophistication of the customer, *Darrell v. Goodson,* CCH Fed.Sec.L.Rep. ¶ 97,349, ¶ 97,326 (S.D.N.Y.1980); *Salwen Paper Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 79 F.R.D. 130, 134–35 (S.D.N.Y. 1978), and as a properly pleaded churning claim is cognizable as fraud under the federal securities laws and has been held to be a deceptive device within § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5, *Newburger, Loeb & Co., Inc. v. Gross,* 563 F.2d 1057, 1069 (2d Cir. 1977); *Darrell v. Goodson, supra* at ¶ 97,326, this court believes that the requirements of Rule 9, Fed.R.Civ.P., must govern as to the pleading of such claims in commodities matters. *See Tomera v. Galt,* 511 F.2d 504, 508–09 (7th Cir. 1975); *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1297 (7th Cir. 1975). *See generally Smith v. Groover, supra* at 119–20. By analogizing to the federal securities laws, it can be seen that churning, as a deceptive device, falls within the antifraud provisions of 7 U.S.C. § 6b. That being true, it is the opinion of this court that, in pleading a commodities claim for churning, the particularity requirements of Rule 9(b), Fed.R.Civ.P., must be satisfied.

To satisfy the requirements of Rule 9(b) when pleading a churning claim in federal securities cases, in addition to identifying the securities involved, such particulars as the nature, amount and dates of the transactions at issue must be included in the complaint. *Vetter v. Shearson Hayden Stone, Inc.,* 481 F.Supp. 64, 66 (S.D.N.Y. 1979). Also, a statement of facts should be included sufficient to allow for a determination of the turnover ratio in the account, and/or the percentage of the account value paid in commissions. *Salwen Paper Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra* at 134–35. In the com-

plaint at bar, these particularity requirements clearly have not been met.

Although the plaintiff herein need not allege a formally discretionary account to establish a claim for churning, she must satisfy the requirements of Rule 9(b) in her pleading. Plaintiff Shelley has not satisfied these requirements in her present complaint, especially in respect to the requirement that the excessiveness of the trading at issue be documented with particularity. *Vetter v. Shearson Hayden Stone, Inc., supra* at 66. *See Salwen Paper Co., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra* at 134–35. As that is true, Count I of the plaintiff's complaint will be dismissed, without prejudice, for failing to state a claim for relief cognizable under Rule 9(b), Fed.R.Civ.P.

### Count II

A number of arguments also have been advanced by the defendants in support of their motion for dismissal of Count II of the plaintiff's complaint, and the court must concede that at least several of their contentions in this regard are not entirely without merit.[4] Subject matter jurisdiction with respect to Count II, though, is founded solely upon the doctrine of pendent jurisdiction. That being true, as Count I of the plaintiff's complaint, the only federal claim being asserted, has been dismissed pursuant to a preliminary pretrial motion, the court believes that to continue to exercise pendent jurisdiction over Count II would at this time be inappropriate. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Count II, therefore, will be dismissed for lack of subject matter jurisdiction. Rule 12(b)(1), Fed.R.Civ.P. This dismissal, however, will be without prejudice to plaintiff Shelley's ability to reinstate Count II if and when a properly pleaded federal claim for relief is presented by her.

---

4. The court, for example, agrees with the defendants that Count II also may be subject to the pleading requirements of Rule 9(b), Fed.R. Civ.P., *see generally Vrooman v. Hawbaker,* 387 Ill. 428, 435, 56 N.E.2d 623 (1944), and, if so, that plaintiff Shelley's present pleading may not be sufficient to satisfy those requirements.

## CONCLUSION

For the reasons set forth above, the following is ordered:

(1) Count I of the plaintiff's complaint is ordered dismissed without prejudice, for failing to state a claim for relief cognizable under Rule 9(b), Fed.R. Civ.P.

(2) Count II of the plaintiff's complaint, a pendent state claim, is ordered dismissed, without prejudice, for lack of subject matter jurisdiction. Rule 12(b)(1), Fed.R.Civ.P.

Plaintiff Shelley is given to May 18, 1981 to, if possible, amend her complaint to remedy the defects noted.

IT IS SO ORDERED.