**Karen E. CARDOZA, Plaintiff,**

v.

**COMMODITY FUTURES TRADING COMMISSION and Board of Trade of the City of Chicago, Defendants.**

**No. 83 C 3671.**

United States District Court,
N.D. Illinois, E.D.

March 26, 1984.

---

Matthias A. Lydon, John A. Dienner, III, Pierce, Lydon, Griffin & Montana, Chicago, Ill., for plaintiff.

David R. Merrill, CFTC, Washington, D.C., James A. McGurk, CFTC, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Karen E. Cardoza ("Cardoza") has sued the Commodity Futures Trading Commission ("CFTC") and the Board of Trade of the City of Chicago ("the Board of Trade"). Presently before the Court are the CFTC's motion to dismiss or for summary judgment and the Board of Trade's motion to dismiss. For reasons set forth below, the CFTC's motion for summary

judgment is granted; the Board of Trade's motion to dismiss is also granted.

Cardoza held a floor activity permit with the Board of Trade, which enabled her to trade commercial paper contracts. She began trading on June 27, 1978, both in person and through other brokers. To encourage use of floor activity permits, Board of Trade rules provide that permit holders may exercise an option to purchase an Associate Membership at a reduced price if they trade at least one commercial paper contract on 125 different days for each of the three years of the permit's duration. Shortly after she began trading, the Board of Trade informed her that only trades personally executed by the permit holder complied with its Rule 225.00. Cardoza did not personally trade one contract a day for 125 days during 1978.

Cardoza tried to exercise her option to purchase an Associate Membership in 1981, but the Board of Trade refused to grant her the membership. Cardoza appealed the Board's decision to the CFTC. On July 28, 1982, the CFTC declined to review the Board of Trade's action. Cardoza claims that the Board of Trade's actions violated contract rights established by the Board's rules, and that the CFTC acted arbitrarily and capriciously by refusing to review and reverse the Board of Trade's decision. She invokes 28 U.S.C. § 1331 and the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, and would have this Court review the CFTC's decision not to review the Board of Trade's actions. She also requests us to enjoin the CFTC to hear her appeal of the Board's conduct,[1] as well as enjoin the

Board to allow her to exercise her option to purchase an Associate Membership and to grant her a one year extension of her floor activity permit. Finally, Cardoza presents a pendent claim for breach of contract against the Board of Trade.

Certain well established principles govern our consideration of these motions. Parties seeking summary judgment must demonstrate the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–61, 90 S.Ct. 1598, 1609–10, 26 L.Ed.2d 142 (1970); *Patterson v. General Motors Corp.*, 631 F.2d 476, 482 (7th Cir.1980), *cert. denied*, 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1980). Courts are to view evidence submitted by the movant in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). In considering motions to dismiss, we take as true all material allegations of fact contained in Cardoza's complaint. A complaint should not be dismissed, moreover, "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972); *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### *Cardoza's Claim Against the CFTC*

Cardoza requests that we order the CFTC to review the Board's decision not to allow her to purchase an Associate Membership. She thus complains of a "discipli-

---

1. The CFTC treats Cardoza's complaint as a request for relief in the nature of mandamus. Cardoza never mentions mandamus in her complaint, nor does she invoke 28 U.S.C. § 1361. She did not respond to the CFTC's mandamus arguments. It is doubtful that mandamus is available in the present case, since mandamus jurisdiction will lie only when a clear, plainly defined and peremptory duty on a federal defendant is shown, and there is a lack of other adequate remedies. Mandamus cannot direct the exercise of administrative discretion within its lawful boundaries. Save the *Dunes Council v. Alexander*, 584 F.2d 158, 162 (7th Cir.1978). We will treat her complaint as a request for

declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.* rather than as a mandamus action. As one commentator has observed

*[a] court has jurisdiction under either § 1331 or § 1361 to require an agency to perform such duties as the law imposes on it, and the scope of review is governed by 5 U.S.C. § 706.*

&ast; &ast; &ast; &ast; &ast; &ast;

Whenever mandatory relief is appropriate on the merits, injunction or declaratory judgment or both will *always* suffice, even when affirmative action of an agency is sought.

K. Davis, Administrative Law Treatise §§ 23:10–23:11 (2d ed. 1983).

nary action" by the Board of Trade, for regulations promulgated by the CFTC define "disciplinary action" to include any action which denies an individual access to an exchange. 17 C.F.R. § 9.2(a) (1983).[2] The CFTC suggests that its decision not to review disciplinary actions by an exchange is not subject to judicial review. Such a decision, according to the CFTC, constitutes "agency action committed to agency discretion by law" under 5 U.S.C. § 701(a)(2). According to 7 U.S.C. § 12c(2), the CFTC may

> in its discretion and in accordance with such standards and procedures as it deems appropriate, review any decision by an exchange whereby a person is suspended, expelled, otherwise disciplined or denied access to the exchange. In addition, the Commission may, in its discretion and upon application of any person who is adversely affected by any other exchange action, review such action.

■ Review of agency action will not be cut off unless there is a persuasive reason to believe that Congress intended such a result. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 1511, 18 L.Ed.2d 681 (1967). We must consider whether Congress expressly or impliedly precluded judicial review. *Barlow v. Collins*, 397 U.S. 159, 165, 90 S.Ct. 832, 837, 25 L.Ed.2d 192 (1970). Only upon a showing of clear and convincing evidence of contrary legislative intent should access to judicial review be restricted. *Abbott Laboratories*, 387 U.S. at 141, 87 S.Ct. at 1511; *Board of Trade v. Commodity Futures Trading Commission*, 605 F.2d 1016, 1022 (7th Cir.1979), *cert. denied*, 446 U.S. 928, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980).

■ In the instant case, there is an absence of clear legislative intent to limit judicial review of CFCT decisions not to review exchange disciplinary actions. The CFTC offers no clear and convincing legislative history to support its position that decisions to deny review are not judicially reviewable. *Secretary of Labor v. Farino*, 490 F.2d 885, 888 (7th Cir.1973).[3] Thus,

---

**2.** 17 C.F.R. § 9.2(a) (1983) provides, in pertinent part, that

> "Disciplinary action" means the suspension, expulsion or other penalty imposed on a member of an exchange by that exchange or any action by an exchange which denies access to that exchange to any person...

As the Commission has stated: "A denial of membership in an exchange is a denial of access within the meaning of section 8c and is therefore governed by the proposed rules. The privileges of exchange membership that an applicant is denied are precisely the privileges which a member losses [sic] when suspended or expelled, with which section 8c is fundamentally concerned. "Commission Review of Exchange Disciplinary as Adverse Action: Proposed Procedures and Standards," 42 Fed.Reg. 30472, 30472 n. 1 (June 14, 1977).

**3.** In support of its argument, the CFTC argues that the statute implies that Congress intended to exempt from judicial review denials of review of exchange disciplinary actions:

> [u]nder the terms of Section 8c, however, there is some indication of Congressional intent that Commission determinations (like the one at issue herein) pursuant to Section 8c(2) of the Act to *deny* (as opposed to granting) review of exchange disciplinary actions are not to be subject to judicial review. In this context, Section 8c(3) provides that, "subject to judicial review," Commission determina-

tions under Section 8c(2) "shall govern the exchange, in its further treatment of the matter." Under Section 8c(2), the Commission is given unfettered discretion to determine whether or not to take review of exchange disciplinary actions. However, because Commission determinations declining review leave exchange actions undisturbed, they do not, in any way, "govern" further exchange actions. Accordingly, the judicial review provision of Section 8c(3) is meaningless when applied to a denial of review. As a result, determinations by the Commission to deny review of exchange disciplinary action, like that at issue in the case at bar, may more properly be characterized as "agency action committed to agency discretion by law" which should not be subject to judicial review. 5 U.S.C. § 701(a)(2).

We do not believe that § 8c reflects a clear and convincing legislative intent to exempt from judicial review CFTC decisions not to review exchange disciplinary actions. Rather, § 8c(3) suggests that Congress intended CFTC decisions pursuant to § 8c(2) to be subject to judicial review:

> [t]he Commission may affirm, modify, set aside, or remand any exchange decision in reviews pursuant to paragraph (2) of this section, after a determination on the record whether the action of the exchange was in accordance with the policies of this chapter.

this case distinguishable from *Board of Trade v. Commodity Futures Trading Commission,* 605 F.2d 1016 (7th Cir.1979), *cert. denied,* 446 U.S. 928, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980), where the Seventh Circuit held, based upon statutory language, the structure of the enforcement provisions of the Act, the Act's legislative history and the nature of the Commission's determination, that emergency determinations pursuant to 7 U.S.C. § 12a(9) were precluded from judicial review by 5 U.S.C. § 701(a)(2). We therefore hold that the CFTC's decision not to review disciplinary action by an exchange is subject to judicial review.

■ Next we must determine the scope of judicial review. If such review is appropriate, as we have decided, the CFTC and Cardoza agree upon the scope of such judicial review to be applied by this Court in judging the CFTC's denial of review of the Board of Trade's disciplinary action against Cardoza. Discretionary agency action shall be set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This type of review is quite narrow. We are to consider whether the CFTC's decision is within the range of its authority and discretion, and whether there has been a clear error of judgment. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 415–16, 91 S.Ct. 814, 823–24, 28 L.Ed.2d 136 (1971); *Secretary of Labor v. Farino,* 490 F.2d 885, 889–90 (7th Cir. 1973).

■ Section 8c of the Commodity Exchange Act, 7 U.S.C. § 12c, grants the CFTC broad authority to review disciplinary actions by exchanges or to decline to review such actions.[4] *See also Commodity Futures Trading Commission v. Polo-*

*nyi,* 531 F.Supp. 18, 19 (W.D.Mo.1981). Pursuant to this section, the CFTC has promulgated rules for the review of exchange actions:

[t]he determination to review any exchange disciplinary or other adverse action is a matter committed to the Commission's discretion. In determining whether to grant or deny review of any exchange disciplinary or other adverse action, the Commission may consider such factors as:

(a) Whether the issues presented involve an important policy under the Act;

(b) The extent to which a review proceeding would interfere with the efficient disposition of other Commission business;

(c) The precedential value of a Commission decision on the issues presented;

(d) Whether there is substantial divergence among the exchanges in their treatment of similar matters;

(e) Whether it appears from the application or other information available to the Commission that the exchange action may not have been taken in accordance with any of the standards contained in § 9.37(b); or

(f) Any other factors which the Commission deems relevant.

17 C.F.R. § 9.30 (1982). Section 9.37(b) provides that:

[t]he standards for Commission review of the disciplinary action or other adverse action shall be:

(1) Whether the exchange disciplinary action or other adverse action was taken in accordance with the rules of the exchange;

(2) Whether fundamental fairness was observed in the conduct of the discipli-

---

*Subject to judicial review,* any order of the Commission entered pursuant to paragraph (2) of this section shall govern the exchange in its further treatment of the matter.
(Emphasis added).

**4.** Section 8c provides that
[t]he Commission may, in its discretion and in accordance with such standards and procedures as it deems appropriate, review any

decision by an exchange whereby a person is suspended, expelled, otherwise disciplined, or denied access to the exchange. In addition, the Commission may, in its discretion and upon application of any person who is adversely affected by any other exchange action, review such action.
7 U.S.C. § 12c(2).

nary proceeding or the proceeding resulting in other adverse action;

(3) Whether there is substantial evidence in the record to support a finding that there has been a violation of the rules of the exchange or that the exchange was otherwise justified in taking the disciplinary or other adverse action;

(4) Whether the disciplinary or other adverse action taken by the exchange was reasonable in light of all circumstances; and

(5) Whether the disciplinary action or other adverse action otherwise accords with the policies of the Act.

17 C.F.R. § 9.37(b). Cardoza asserts that if any of the standards set forth in § 9.37(b) are met, then the CFTC must address the merits of a petition for review. She adds that her petition for review put in issue several of the § 9.37(b) factors.

The CFTC declined to review the Board of Trade's disciplinary action against Cardoza. In a letter to Cardoza's attorney, the CFTC explained its reasoning as follows:

the Commission determined that none of the factors in Commission regulation 9.30 warrant the exercise of the Commission's discretion to review the instant action. The Commission perceives no issue in Ms. Cardoza's Application that involves an important policy under the Act, believes there would be little precedential benefit from a Commission decision on the issues, and has no information evidencing a substantial divergence among the exchanges in their treatment of similar matters. Moreover, the Commission has not found sufficient information in Ms. Cardoza's Application and, after a review of the full record of the Exchange's action, does not have available other information related to the action in question, which indicates that the Exchange action was not taken in accordance with the standards contained in Commission regulation 9.37(b).

The CFTC's decision not to review the Board of Trade's disciplinary action was within the range of its authority and discretion. Cardoza's reliance upon the standards in § 9.37(b) is misplaced. Section 9.37(b) lists standards to be applied once the CFTC has decided to review a disciplinary action by an exchange. Additionally, according to § 9.30, in deciding initially whether to review an exchange action, the CFTC *may* consider whether exchange action was not in accord with the standards of § 9.37(b). Cardoza's argument that review is mandatory once § 9.37(b) standards are raised finds no support in the CFTC's regulations.

Review of the CFTC's letter to Cardoza indicates that the CFTC followed its own rules in declining to review the Board of Trade's disciplinary action against her and considered the relevant factors enumerated in those rules. There is no evidence of a clear error of judgment nor an abuse of discretion. Accordingly, the CFTC's motion for summary judgment is granted.

### Cardoza's Claim Against the Board of Trade

Cardoza maintains that a private right of action exists under the Commodity Exchange Act against the Board of Trade.[5] She claims that the Board of Trade breached Rule 225.00 by refusing to grant her an Associate Membership. Rule 225.00 provides that

[a]t the end of three years after the first Commercial Paper Permit is sold, the Association shall issue for a period of twelve (12) months thereafter an Associate Membership to any Commercial Paper Permit holder, hereunder, who has met the following conditions:

---

**5.** Cardoza purports to invoke federal question jurisdiction under 28 U.S.C. § 1331. However, she has not pled a violation of any constitutional provision. The Administrative Procedure Act, moreover, applies not to the Board of Trade, but only to an "authority of the Government...." 5 U.S.C. § 551(1). *Cf. Schultz v. Securities and Exchange Commission,* 614 F.2d 561, 569 (7th Cir. 1980) (the Administrative Procedure Act does not apply to the Chicago Board of Options Exchange).

(1) The Permit holder must pay $40,-000 less Permit fees paid in accordance with Regulation 225.04; and

(2) Subject to Regulation 225.11, the Permit holder must demonstrate, by account activity statements or brokerage reports, that he has traded at least one Commercial Paper contract for himself or others on at least 125 business days in each of three one year periods, starting from the day the Permit holder is granted his Permit; and

(3) The Permit holder has exercised his option to purchase an Associate Membership within six (6) months of the expiration of the Permit.

Cardoza argues that the Board of Trade's notice that only trades personally executed by her would meet the requirements of Rule 225.00(2) was an attempt to unilaterally amend the terms of the contract between the parties and violated Rule 225.00.

The Commodity Exchange Act is silent on the subject of private judicial remedies for its violation. To support her contention that an alleged violation of Rule 225.00 is actionable under the Commodity Exchange Act, Cardoza cites *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1981). In *Curran,* the Supreme Court held that an implied private right of action existed for violations of certain sections of the Commodity Exchange Act. The sections at issue were § 4a, 7 U.S.C. § 6a; 4b, 7 U.S.C. § 6b; 5a(8), 7 U.S.C. § 7a(8); 5(d), 7 U.S.C. § 7(d); and 9(b), 7 U.S.C. § 13(b). Section 4b prohibits fraudulent and deceptive conduct, while the other sections are designed to prevent price manipulation. Prior to the 1974 amendments to the Commodities Exchange Act, the courts recognized private rights of action under the sections at issue. Thus, an implied cause of action under these sections was part of the "contemporary legal context," and the fact that Congress left intact these portions of the statute, plus other legislative history, led the Court to conclude that Congress intended to preserve these pre-existing private rights of action when it amended the Act in 1979.

■ In the present case, Cardoza does not state the section of the Act under which her claim arises. Instead, she appears to contend that the Board of Trade has failed to follow its own Rule 225.00. This claim, however, would invoke § 5a(8) of the Act.[6] That section provides that

[e]ach contract market shall—

\* \* \* \* \* \*

(8) enforce all bylaws, rules, regulations, and resolutions, made or issued by it or by the governing board thereof or any committee, that (i) have been approved by the Commission pursuant to paragraph (12) of this section, (ii) have become effective under such paragraph, or (iii) must be enforced pursuant to any Commission rule, regulation, or order; and revoke and not enforce any bylaw, rule, regulation, or resolution, made, issued, or proposed by it or by the governing board thereof or any committee, that has been disapproved by the Commission;

7 U.S.C. § 7a(8). *Curran* clearly held that exchanges can be held accountable for breaching their statutory duty to enforce their own rules prohibiting price manipulation. 456 U.S. at 394, 102 S.Ct. at 1847. We believe that this reasoning extends to alleged violations of other exchange rules. Rule 225.00, at issue in the present case, does not involve price manipulation. But *Curran* specifically noted that Congress declined to amend the Commodity Exchange Act to abolish a cause of action for the violation of exchange rules. *Id.* at 382–88, 102 S.Ct. at 1841–44. Thus, 7 U.S.C. § 7a(8), and the private cause of action that has been implied from it, are integral to the self regulation concept behind federal regulation of exchanges. *Id.* We therefore hold that an alleged violation of Rule 225.00 states a claim under the Commodity Exchange Act.

---

**6.** Contrary to the Board of Trade's assertions, we do not believe that Cardoza is asserting a private right of action under § 8c of the Act, 7 U.S.C. § 12c.

■ The Board of Trade, however, claims that Cardoza's claims are time barred. To determine the limitations period for a cause of action which has been implied into a federal statute, courts are to apply that statute of limitations of the forum state governing the state law most analogous to the federal right being asserted. *UAW v. Hoosier-Cardinal Corp.*, 383 U.S. 696, 701–04, 86 S.Ct. 1107, 1111–13, 16 L.Ed.2d 192 (1966). Cardoza maintains that because she is asserting a breach of contract claim, we should apply the five year limitation period in Ill.Rev.Stat. ch. 110 § 13–205 or the ten year period of Ill.Rev.Stat. ch. 110, § 13–206.

■ A cause of action occurring prior to January 11, 1983, under the Commodity Exchange Act must be brought within three years. *Shelley v. Noffsinger*, 511 F.Supp. 687, 690–91 (N.D.Ill.1981); *Smith v. Groover*, 468 F.Supp. 105, 119–20 (N.D. Ill.1979). We join those cases in adopting the three year limitations period set forth in the Illinois Securities Law, Ill.Rev.Stat. ch. 121½, § 137.13, for claims occurring prior to January 11, 1983.[7] Cardoza learned that the Board of Trade's Membership Committee declined to waive its interpretation of the 125 day trading requirement in Rule 225.00 on November 15, 1979. Her claim occurred on that date. The instant case was filed on May 27, 1983, which is more than three years after her claim occurred.[8] We therefore hold that her claim is barred by the statute of limitations and grant the Board of Trade's motion to dismiss her federal claim.

Cardoza's pendent state claim for breach of contract against the Board of Trade is also dismissed. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

For the foregoing reasons, CFTC's motion for summary judgment is granted. The Board of Trade's motion to dismiss is granted. It is so ordered.

**7.** As of January 11, 1983, the Act was amended to provide for a two year limitation period for violations of rules or regulations issued pursuant to 7 U.S.C. § 18(a).

**8.** Cardoza voluntarily dismissed a prior action against the Board of Trade filed in 1982.